Case No. 23-1961

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

ADAM N. BERRY,

*Plaintiff-Appellant*,

vs.

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellee*.


On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division
District Court Case No. 22-cv-11556
Hon. Mark S. Goldsmith

---

**REPLY BRIEF OF APPELLANT ADAM N. BERRY**

---

Tarek N. Chami (P76407)
CONSUMER ATTORNEYS
22000 Michigan Ave., Suite 200
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerattorneys.com

*Attorneys for Plaintiff-Appellant Adam N. Berry*

i

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................ **ii**

**INTRODUCTION** ............................................................................**1**

I.   The plain language of § 1681s-1 contradicts Experian's construction of the FCRA's reporting requirements for child support payments. .........................2

    *A.*  *Berry has not forfeited his right to make arguments pertaining to § 1681s-1(1)(B).* ............................................................................3

    B.  *The provisions of § 1681s-1(1)(B) are crucial to a correct interpretation of a CRA's duties to report only accurate information about child support payments.* ..................................5

II.  No case law supports Experian's construction of § 1681s-1........................12

III.  Reporting a state court's express finding that child support payments were timely does not involve resolving "unadjudicated legal issues." .................14

**CONCLUSION AND RELIEF REQUESTED** ................................**15**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** ..............**16**

**CERTIFICATE OF SERVICE** .......................................................**17**

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Banks v. Roe*,
  No. CV 17-96-M-DLC-JCL, 2017 U.S. Dist. LEXIS 152346
  (D. Mont. Sep. 19, 2017) ................................................................. 10

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) ........................................................... 15

*Chelf v. Prudential Ins. Co. of Am.*,
  31 F.4th 459 (6th Cir. 2022) ............................................................. 4

*Chuluunbat v. Experian Info. Sols., Inc*.,
  4 F.4th 562 (7th Cir. 2021) ............................................................. 14

*Cisneros v. Alpine Ridge Grp*.,
  508 U.S. 10 (1993) ........................................................................... 5

*Dean v. Veterans Admin. Reg'l Office*,
  943 F.2d 667 (6th Cir. 1991), *vacated and remanded on other*
  *grounds by* 503 U.S. 902 (1992) ...................................................... 6

*Hubbard v. United States*,
  514 U.S. 695 (1995) .................................................................... 9, 10

*In re Keller*,
  Nos. 12-22391-B-13, SJS-006, 2016 Bankr. LEXIS 2052
  (Bankr. E.D. Cal. May 17, 2016), *aff'd Keller v. New Penn Fin., LLC*
  *(In re Keller)*, 568 B.R. 118 (B.A.P. 9th Cir. 2017) .......................... 7

*Johnson v. Trans Union, LLC*,
  524 F. App'x 268 (7th Cir. 2013) .................................................... 12

*Laborers' Int'l Union of N. Am. v. Neff*,
  29 F.4th 325 (6th Cir. 2022) ........................................................... 12

*Leonor v. Provident Life & Acc. Co.*,
  790 F.3d 682 (6th Cir. 2015) ............................................................ 4

*Loughrin v. United States*,
  573 U.S. 351 (2014) ......................................................................... 3

*Mills v. Barnard*,
  869 F.3d 473 (6th Cir. 2017) ............................................................ 4

*Norman v. Experian Info. Sols., Inc*.,
  No. 3:12-CV-128-B, 2013 U.S. Dist. LEXIS 59163
  (N.D. Tex. Apr. 25, 2013) ............................................................... 13

*Pucci v. Nineteenth Dist. Court*,
  628 F.3d 752 (6th Cir. 2010) ........................................................... 11

*Tiger Lily, LLC v. United States Dep't of Housing & Urban Dev*.,
  5 F.4th 666 (6th Cir. 2021) ................................................................3, 6

*Trackwell v. United States Gov't*,
  472 F.3d 1242 (10th Cir. 2007) ..................................................... 10, 11

*Underwood v. Experian Info. Sols., Inc*.,
  No. 16 C 7829, 2017 U.S. Dist. LEXIS 52244 (N.D. Ill. Apr. 5, 2017) ..............13

*United States v. Amawi*,
  552 F. Supp. 2d 679 (N.D. Ohio 2008) .............................................11

*United States v. Charles*,
  843 F.3d 1142 (6th Cir. 2016) ...............................................................4

*United States v. Robinson*,
  764 F.3d 554 (6th Cir. 2014) ................................................................5

**Statutes**

The Fair Credit Reporting Act, 15 U.S.C. § 1681 ...................................................3

## INTRODUCTION

The dispositive – and undisputed – facts in this case show that Plaintiff-Appellant Adam Berry ("Berry") is not a "deadbeat dad" but that Defendant-Appellee Experian Information Systems, Inc. ("Experian") reported him as one, choosing to rely upon inaccurate information from a local child support enforcement agency when it had verified information to the contrary from a state court. The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") cannot be read to authorize this deliberate disregard of the truth, and the district court erred by adopting such a reading. Section 1681s-1(1)(B) of the FCRA specifically authorizes credit reporting agencies ("CRAs") to accept and report information about child support payments that is verified by any local, state, or federal government agency, and Experian violated the FCRA by deliberately ignoring such verified information from the state court that had defined Berry's child support obligations in the first place.

In its brief on appeal, Experian does not argue or show that it was correct in reporting that Berry was overdue in paying child support, and it does not argue or show that the state court was incorrect when it issued an order finding that Berry's child support payments had all been timely. Instead, Experian insists that § 1681s-1 requires credit reporting agencies ("CRAs") to ignore accurate information from state courts and to rely instead on demonstrably inaccurate information as long as it

1

comes from a local or state child enforcement agency. Even though this approach to consumer reporting turns the FCRA upside down, Experian also insists that, when it amended the FCRA to add § 1681s-1, Congress wanted to promote such inaccurate reporting as a way to address the problem of "deadbeat dads."

Experian's arguments fail because they are contrary to the statutory language of § 1681s-1, the principles of statutory construction, and the express purposes of the FCRA. Moreover, Experian cannot identify a single judicial opinion in which a court concluded that the FCRA authorized inaccurate reporting by a CRA about a consumer's child support payment history, as long as the reporting was based on information from a local or state child support enforcement agency. There is simply no legal basis for the district court's and Experian's conclusion that CRAs should be permitted to maintain and report inaccurate information about a consumer's child support payment history. With respect to policy and Congress' intentions, Experian does not even attempt to explain how its keeping or reporting of inaccurate information solves the problem of "deadbeat dads" or what policy is served by misidentifying who the "deadbeat dads" are.

## I.    The plain language of § 1681s-1 contradicts Experian's construction of the FCRA's reporting requirements for child support payments.

Experian argues for an interpretation of § 1681s-1 that disregards a crucial part of the statutory text: the provision of § 1681s-1(1)(B), which establishes the "second condition" for the reporting of information on overdue child support

payments. Like the district court, Experian concludes that § 1681s-1(1)(A) requires the reporting of "any information" from state or local child support enforcement agencies, regardless of its accuracy; but this conclusion is possible only if one ignores § 1681s-1(1)(B), which, as an alternative to reporting information from state child support enforcement agencies, requires CRAs to report "verified" information from any local, state, or federal government agency. Because statutes must be read to give effect to all of their provisions, the reading adopted by the district court and defended by Experian here is contrary to law. *See Tiger Lily, LLC v. United States Dep't of Housing & Urban Dev*., 5 F.4th 666, 669 (6th Cir. 2021) ("When we interpret statutes, we must give effect to each clause and word.") (citing *Loughrin v. United States*, 573 U.S. 351, 358 (2014)).

   A.    *Berry has not forfeited his right to make arguments pertaining to § 1681s-1(1)(B).*

Apparently preferring to avoid any discussion of § 1681s-1(1)(B), Experian contends that Berry waived his right to make any arguments regarding this subsection; but this contention misstates the rules governing the waiver of arguments on appeal. See Appellee's Brief, Doc. No. 18 at PageID 30. Although appellate courts do not consider issues not raised in the lower court, they do consider new arguments regarding issues raised below. As this Court has held, "'[w]e have recognized a distinction between failing to properly raise a claim before the district court and failing to make an argument in support of that claim.'" *Chelf v. Prudential*

*Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022) (quoting *Leonor v. Provident Life & Acc. Co.*, 790 F.3d 682, 687 (6th Cir. 2015)). "An argument is not forfeited on appeal because a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised." *Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017) (citing *Leonor*, 790 F.3d at 687); *see also United States v. Charles*, 843 F.3d 1142, 1147 (6th Cir. 2016) ("The failure to cite additional authority for a point does not a forfeiture make...."). "Thus, as long as a claim or issue was raised before the district court, a party may 'formulate[ ] any argument they like[ ] in support of that claim here.'" *Chelf*, 31 F.4th at 468 (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534–35, (1992)).

In his opposition to Experian's Motion for Judgment on the Pleadings, Berry raised the same issue that he raises here: that the requirements of § 1681s-1 do not relieve CRAs of their overarching statutory duty to report accurate information. Plaintiff's Opposition, ECF No. 31, PageID 212-15. By specifically raising this issue in the district court and making arguments about the proper interpretation of § 1681s-1, Berry preserved this issue and argument for appeal and is permitted to invoke additional authorities, including § 1681s-1(1)(B), to support his construction of the FCRA's requirements for reporting about child support payments. *See Chelf*, 31 F.3d at 468.

B.   *The provisions of § 1681s-1(1)(B) are crucial to a correct interpretation of a CRA's duties to report only accurate information about child support payments.*

Experian's construction of § 1681s-1 rises or falls on the proposition that the section's "notwithstanding" clause should be read to override any and all other requirements of the FCRA with respect to information about overdue child support payments, including the requirement of maximum accuracy in reporting, as expressed in §§ 1681e(b) and 1681i. Appellee's Brief, Doc. No. 18, at PageID 31-32. But this facile reading of the "notwithstanding" clause is contrary to this Court's principles for the construction of such clauses. *See United States v. Robinson*, 764 F.3d 554, 560 (6th Cir. 2014). When the proper construction of the "notwithstanding" clause is applied, and when the second condition of § 1681s-1(1)(B) is taken into account, it is impossible to conclude, as the district court did, that CRAs are permitted to report demonstrably inaccurate information as long as it comes from a local or state child support enforcement agency.

The inclusion of a "notwithstanding" clause in a statute is an instrument for establishing a priority among conflicting statutory provisions. The Supreme Court has held that the language of "notwithstanding" clauses "signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). This Court follows that principle of construction. *Robinson, supra*; *see also*

*Dean v. Veterans Admin. Reg'l Office*, 943 F.2d 667, 670 (6th Cir. 1991), *vacated and remanded on other grounds by* 503 U.S. 902 (1992).

Experian defends the district court's reading of § 1681s-1 by arguing that the "notwithstanding" clause in § 1681s-1 overrides the provisions of §§ 1681e(b) and 1681i, thus permitting CRAs to report inaccurate information when it comes from local and state child support enforcement agencies. Appellee's Brief, PageID 31-32. But this argument fails because there is no conflict between the requirements of § 1681s-1 and §§ 1681e(b) and 1681i. Through its reference to "verified" information, the plain language of § 1681s-1(1)(B) makes it clear that § 1681s-1, like §§ 1681e(b) and 1681i, reflects a commitment to the reporting of accurate information about child support payments. If the district court's and Experian's construction of § 1681s-1 were correct, there would be no reason to include the second condition of § 1681s-1(1)(B). If the second condition were omitted, a CRA could lawfully report "any information," regardless of accuracy, if it came from a local or state child support enforcement agency. Of course, statutes cannot be read in the manner suggested by Experian; they must be construed to give effect to all of their language. *Tiger Lily, LLC v. United States Dep't of Housing & Urban Dev.*, 5 F.4th 666, 669 (6th Cir. 2021). When § 1681s-1(1)(B) is considered, there can be no doubt that the abiding requirement of § 1681s-1 is the reporting of accurate information, as long as the accuracy is "verified" by a local, state, or federal agency.

Even if § 1681s-1 does not conflict with §§ 1681e(b) or 1681ia or with FCRA's overarching mandate for accuracy in consumer reporting, it does, however, conflict with another provision of the FCRA, § 1681c(a)(1), which establishes reporting requirements for any matter involved in a bankruptcy case. Section 1681c(a)(1) generally prohibits CRAs from reporting any information involving "[c]ases under title 11 or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years." The "notwithstanding" clause of § 1681s-1 is directed at § 1681c(a)(1), establishing that the general reporting requirement for matters involved in bankruptcy does not apply to information about overdue child support payments and that § 1681s-1 itself provides the proper rule for reporting such payments. As Berry has previously argued, this is the holding in *In re Keller*, Nos. 12-22391-B-13, SJS-006, 2016 Bankr. LEXIS 2052 (Bankr. E.D. Cal. May 17, 2016), *aff'd Keller v. New Penn Fin., LLC (In re Keller)*, 568 B.R. 118 (B.A.P. 9th Cir. 2017), which explained how amendments to the Bankruptcy Act and the FCRA were designed to create a single, uniform rule for the reporting of overdue child support payments, regardless of whether the payor was involved in bankruptcy proceedings. Experian maintains that *Keller* is inapposite, but the *Keller* Court's explanation of the relationship between §§ 1681c(a)(1) and 1681s-1 is consistent with the rules of statutory construction, and Experian's reading is not. Simply put, Experian fails to

7

carry the extraordinary burden of showing that § 1681s-1 should be read to invalidate any and every other provision of the FCRA, permitting the reporting of inaccurate information about child support payments.

Not only do Experian's arguments defy the principles of statutory construction, they also conflict with the legislative history for § 1681s-1, upon which Experian purports to rely. As Experian notes, Congress enacted the reporting requirements for overdue child support payments as part of the Ted Weiss Child Support Enforcement Act of 1992, with the intention that those requirements would assure that "deadbeat dads" faced accountability for missing child support payments. Appellee's Brief, Doc. No. 18 at PageID 14-15 (citing legislative history). The *Keller* Court's interpretation of § 1681s-1 is consistent with this purpose because having a uniform rule for all reporting of child support payment history makes it harder for neglectful parents to use bankruptcy proceedings to hide a record of evading child support payment obligations. But this purpose for the 1992 amendments is not served by the reading of § 1681s-1 that was adopted by the district court and is now embraced by Experian. Permitting the reporting of inaccurate information about child support payments does nothing to increase accountability for neglectful parents. The facts of this case help demonstrate why. No constructive purpose is advanced by identifying Berry as a "deadbeat dad" when he is not one. Only **accurate** reporting promotes meaningful accountability for neglectful parents,

and Experian's reading of § 1681s-1 militates against accurate reporting and gives CRAs a license to misidentify law-abiding parents like Berry as "deadbeats."

C.    *A state court is a state agency for the purposes of § 1681s-1.*

Experian also argues that second condition of § 1681s-1(1)(B) cannot apply here because a state court cannot be defined as a "state agency" within the meaning of the statute. But Experian's authorities for this argument are all inapposite because they pertain to the question whether federal courts count as federal agencies, not to the question whether a state court can be characterized as a "state agency."

Experian's principal authority is *Hubbard v. United States*, 514 U.S. 695 (1995), where the Supreme Court considered whether a federal court counted as a federal "department or agency" for the purposes of the federal criminal code. Specifically, in *Hubbard*, the petitioner made false statements of fact in unsworn papers in a bankruptcy proceeding, and then was convicted of violating 18 U.S.C. § 1001, which, at the time *Hubbard* was decided, made it a criminal offense to knowingly and willfully make false statements "in any matter within the jurisdiction of any department or agency of the United States."[1]  The question presented in *Hubbard* was whether a federal bankruptcy court was a department or agency of the

---

[1] Section 1001 was subsequently amended to cover false statements in "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."

United States. In this connection, the *Hubbard* Court noted that the federal criminal code expressly defines "agency" to "include[ ] any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense." *Hubbard*, 514 U.S. at 700 (citing 18 U.S.C.S. § 6). And the *Hubbard* Court concluded that a bankruptcy court did not count as a federal agency for the purposes of the then-applicable version of § 100 *Hubbard*, 514 U.S. at 712-14. But this conclusion has nothing to do with the FCRA or with the question whether, from a federal perspective, a state court can be characterized as a "state agency" for the purposes of the FCRA.

To support its contention about the meaning of "state agency" under the FCRA, Experian cites two other cases that considered whether a federal court was an "agency" of the United States for the purpose of 28 U.S.C. § 1361, the statute that creates a cause of action by which a plaintiff could ask a district court to issue a writ of mandamus to a "officer or employee of the United States or any agency thereof." *See Trackwell v. United States Gov't*, 472 F.3d 1242 (10th Cir. 2007); *Banks v. Roe*, No. CV 17-96-M-DLC-JCL, 2017 U.S. Dist. LEXIS 152346 (D. Mont. Sep. 19, 2017). For example, in *Trackwell*, the Tenth Circuit considered whether § 1361 permitted a plaintiff to ask a district court to issue a writ of mandamus to the United

States Supreme Court. *Trackwell*, 472 F.3d at 1246. The answer to this question hardly sheds any light on the meaning of "state agency" under § 1681s-1(1)(B).

Experian fares no better with its last cited case on this point, *United States v. Amawi*, 552 F. Supp. 2d 679 (N.D. Ohio 2008). There, a criminal defendant moved for the production of electronic communications under 18 U.S.C. § 2703(d), which authorized such production to a federal "government entity." The defendant argued that the Office of the Federal Public Defender, which represented him in the case, was a government entity. The district court rejected this argument, noting that the Office was a part of the judicial branch, and the judicial branch was not a department or agency for those purposes. Again, this case offers no help in deciding whether a state court counts as a "state agency" for the purpose of § 1681s-1.

Experian hand waves at Berry's cited authority on this question because, in Experian's view, that authority pertains only to issues of sovereign immunity under 28 U.S.C. § 1983. But the status of state courts in the context of sovereign immunity is far more relevant to this question than cases about whether federal courts can count as federal agencies for the purpose of federal criminal law or the law of mandamus. As Berry has noted in his opening brief, case law shows that, for the purposes of sovereign immunity, federal courts regard state courts as "instrumentalities" or "agencies" of state government because they exercise the sovereign power of the state. *See, e.g., Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 762-63 (6th Cir. 2010)

("just as the Michigan Supreme Court is an arm of the state, so is its Nineteenth District Court."); see also *Laborers' Int'l Union of N. Am. v. Neff*, 29 F.4th 325, 331 (6th Cir. 2022) ("If any entity qualifies as an arm of the State, a state court does."). Consequently, if the exercise of sovereign power is the defining characteristic of a "state agency," then cases about sovereign immunity demonstrate that state courts and state administrative agencies both exercise such power. Indeed, in determining whether a parent has fulfilled his or her child support obligations, the state court that issued the child support order is in the more authoritative position to determine compliance than the state child support enforcement agency, which executes the child support orders but does not issue or interpret them.

## II.    No case law supports Experian's construction of § 1681s-1.

Experian's construction of § 1681s-1 is not only contrary to the plain language of the statute and the principles of statutory construction, it is also entirely unsupported by case law. Experian has not cited a single case where a court held that a CRA could report inaccurate information about child support payments, as long as that information came from a state child support agency. Experian insists that, in *Johnson v. Trans Union, LLC*, 524 F. App'x 268 (7th Cir. 2013), the Seventh Circuit affirmed the dismissal of a claim like Berry's even though the consumer disputed the accuracy of the reported information, but Experian mischaracterizes the procedural facts of that case. See Appellee's Brief, Doc. No. 18 at PageID 24 n.3. In

*Johnson*, the consumer did not dispute that he had been late in making child support payments; he contended that the CRA-defendant improperly relied on information from the state child support enforcement agency when it should have relied only upon a judicial order. *Id*. at 271. The Seventh Circuit specifically noted that the consumer "did not put forward any evidence that [the CRA] reported any inaccurate information about him." *Id*. at 269. Of course, Berry has provided such evidence here, and that distinction alone makes *Johnson* inapposite. Similarly, Experian's other cited cases unequivocally state that the consumers admitted the accuracy of the CRA's reporting. *Underwood v. Experian Info. Sols., Inc*., No. 16 C 7829, 2017 U.S. Dist. LEXIS 52244, at *7 (N.D. Ill. Apr. 5, 2017) ("the complaint also alleges facts establishing that Underwood was at multiple points overdue on his child support obligations"); *Norman v. Experian Info. Sols., Inc*., No. 3:12-CV-128-B, 2013 U.S. Dist. LEXIS 59163, at *13-14 (N.D. Tex. Apr. 25, 2013) (""Norman admits he has not paid toward either of the child support accounts at issue since 2003.")

Experian also argues that CRAs cannot be required to look behind information furnished by a local or state child support enforcement agency and make its own determination of the accuracy of that information. Appellee's Brief, Doc. No. 18, PageID at 24 n.3. But Berry's claim in this case does not depend upon giving CRAs a duty to inquire about the accuracy of information from the relevant local or state agency. Rather, Berry's claim depends upon the proposition that, under § 1681s-

1(1)(B), CRAs have a duty to accept and report verified information about child support payments when that information comes from a local, state, or federal government agency, including state courts.

**III.    Reporting a state court's express finding that child support payments were timely does not involve resolving "unadjudicated legal issues."**

Experian argues for affirming the district court's ruling by invoking the rule that an FCRA plaintiff cannot allege an actionable inaccuracy by pointing to a CRA's reporting about an "unadjudicated legal issue." Appellee's Brief, Doc. No. 18 at PageID 24. Although this is certainly a rule that applies to FCRA claims, it cannot possibly apply to Berry's claim because the question whether he timely made his child support payments is neither a legal issue, nor is it unadjudicated. Berry's claim does not allege that Experian was inaccurate in answering a legal question that can only be resolved by a court; his claim is that Experian violated the FCRA because it refused to recognize that a court adjudicated the factual question about the timeliness of his child support payments.

Other circuits have held that questions about whether a consumer's payment was timely are necessarily factual issues, not legal ones. *See, e.g., Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568 (7th Cir. 2021) ("examples of factual inaccuracies include the amount a consumer owes, and what day a consumer opened an account or incurred a payment"); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

876, 891 (9th Cir. 2010). Here, of course, Berry's complaint alleges that Experian's inaccuracy pertained to the timeliness of his child support payments, not to any question about the nature or extent of his legal duty to make such payments. In addition, the question whether Berry's payments were timely is not "unadjudicated." In fact, because there is no dispute that Berry sought and obtained a court order confirming the timeliness of his payments, the factual issue about timeliness has been adjudicated and resolved in his favor.

## CONCLUSION AND RELIEF REQUESTED

Experian violated the FCRA when it ignored authoritative, unequivocal factual information on a state court to misidentify Berry as a "deadbeat dad;" and the district court erred when it concluded that such misidentification was not only permitted but compelled by § 1681s-1. Berry asks this Court to reverse the district court's order granting judgment on the pleadings and remand the case with instructions to permit Berry to move forward with his claims against Experian under the FCRA.

Dated: March 1, 2024         By: */s/ Tarek N. Chami*
                             Tarek N. Chami (P76407)
                             **CONSUMER ATTORNEYS**
                             22000 Michigan Ave., Suite 200
                             Dearborn, MI 48124
                             T: (313) 447-0488
                             E: tchami@consumerattorneys.com

                             *Attorneys for Plaintiff*
                             *Adam N. Berry*

15

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I hereby certify that (1) this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because the brief contains 3,705 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and (2) this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

Dated:  March 1, 2024                    By:  *<u>/s/ Tarek N. Chami</u>*

## <u>CERTIFICATE OF SERVICE</u>

On March 1, 2024, the undersigned counsel electronically filed this brief with this Court's CM/ECF system, which will send electronic notice of filing to all parties by electronic mail.


By:  <u>*/s/ Tarek N. Chami*</u>